The appellant, Larry Wade Cooley, was charged with distributing a controlled substance, a violation of §13A-12-211, Code of Alabama 1975, and distributing marijuana, a violation of § 13A-12-213. He was acquitted of the distributing marijuana charge and was found guilty of distributing a controlled substance. He was sentenced to seven years in the state penitentiary and was fined $1,000 under the Demand Reduction Assessment Act, § 13A-12-281.
 I
The appellant contends on appeal that the trial court erred in allowing evidence of a search warrant issued for the appellant's premises 11 years before the instant offense to show that the appellant was predisposed to sell controlled substances.
The appellant was charged with two counts of distributing controlled substances. The *Page 547 
facts that form the basis of these charges occurred on two separate occasions on August 19, 1993, and August 23, 1993. The appellant relied on the defense of entrapment and testified that he had never sold drugs before the instant offenses. During the appellant's cross-examination, the following occurred:
 "Q — Mr. Cooley, just so I understand: You are admitting that you sold Andy Atkins marijuana on August 19, aren't you?
"A — Yes, sir.
 "Q — And you are also admitting that you sold him marijuana on August 26, 1993?
"A — Yes, sir.
 "Q — Now, you testified that you used marijuana back when you were in high school, I guess, or a teenager; is that right?
"A — Yes, sir.
"Q — Did you ever sell it?
"A — No, sir.
"Q — Never sold it?
"A — No, sir.
 "Q — Do you recall an incident where Agent Norman Willingham executed a search warrant on you at your residence —"
The court overruled the appellant's objection and allowed the evidence to show the appellant's predisposition to sell drugs. The court also gave the jury a limiting instruction on the use of the evidence.
The appellant contends that the evidence should have been excluded because, he argues, it was too remote, being more than 10 years old, and because it related to an offense as to which the appellant was treated as a youthful offender.
This court in Barnett v. State, 639 So.2d 527, 531
(Ala.Cr.App. 1993), stated the following concerning the defense of entrapment:
 "When the appellant relies on the defense of entrapment, the state is obliged to show that the appellant was predisposed to commit the act. An entrapment defense is not effective if the state proves that the accused had a predisposition to commit the crime charged.
 "In demonstrating predisposition, the government is not restricted to using past offenses or reputation evidence. Evidence of predisposition may also include the readiness or eagerness of the defendant to deal in the proposed transaction, or post-crime statements such as 'if you need more, I'll be here.' United States v. Jenkins, 480 F.2d 1198 (5th Cir. 1973)."
 "United States v. Andrews, 765 F.2d 1491, 1499
(11th Cir. 1985), cert. denied, 474 U.S. 1064, 106 S.Ct. 815, 88 L.Ed.2d 789 (1986); United States v. Dickens, 524 F.2d 441 (5th Cir. 1975), cert. denied, 425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819
(1976)."
In 1990 the Alabama Supreme Court modified prior law as it related to the admission of state's evidence rebutting an entrapment defense. Lambeth v. State, 562 So.2d 575 (Ala. 1990). The court stated the following:
 "[T]he focal point of inquiry in entrapment cases is the predisposition of the defendant. United States v. Webster, 649 F.2d 346, 348 (5th Cir. 1981). Being 'predisposed' means being 'presently ready and willing to commit the crime,' and it has been further held:
 " '[T]he predisposition which must be shown by the prosecution is a "state of mind which readily responds to the opportunity furnished by the officer or his agent to commit the forbidden act for which the accused is charged." . . . [P]redisposition is, by definition, "the defendant's state of mind and inclinations before his initial exposure to government agents." '
 "Chillous [v. State,] 441 So.2d [1055] at 1057 [(Ala.Cr.App. 1983)] (quoting United States v. Burkley, 591 F.2d 903 (D.C. Cir. 1978), cert. denied, 440 U.S. 966, 99 S.Ct. 1516, 59 L.Ed.2d 782
(1979), and United States v. Kaminski, 703 F.2d 1004, 1008 (7th Cir. 1983)).
". . .
 ". . . Some jurisdictions allow hearsay and reputation evidence to be admitted to establish predisposition. See United States v. Hawke, 505 F.2d 817 (10th Cir. 1974), cert. denied, 420 U.S. 978, 95 S.Ct. 1404, 43 L.Ed.2d 658 (1975); State v. Talbot, 135 N.J. Super. 500, 343 A.2d 777 (1975), aff'd on other grounds, 71 N.J. 160, *Page 548 364 A.2d 9 (1976). However, a substantial number of jurisdictions refuse to permit reputation or hearsay evidence to establish predisposition. See United States v. Richardson, 764 F.2d 1514 (11th Cir.), cert. denied, 474 U.S. 952, 106 S.Ct. 320, 88 L.Ed.2d 303 (1985); United States v. Hunt, 749 F.2d 1078 (4th Cir. 1984), cert. denied, 472 U.S. 1018, 105 S.Ct. 3479, 87 L.Ed.2d 614 (1985); United States v. Webster, 649 F.2d 346 (5th Cir. 1981) (en banc); United States v. McClain, 531 F.2d 431 (9th Cir.), cert. denied, 429 U.S. 835, 97 S.Ct. 102, 50 L.Ed.2d 101 (1976); United States v. Ambrose, 483 F.2d 742 (6th Cir. 1973); United States v. Johnston, 426 F.2d 112 (7th Cir. 1970); United States v. Catanzaro, 407 F.2d 998 (3d Cir. 1969); Whiting v. United States, 296 F.2d 512 (1st Cir. 1961); Bauer v. State, 528 So.2d 6 (Fla. Dist. Ct. App. 1988); Bowser v. State, 50 Md. App. 363, 439 A.2d 1 (1981); State v. Jones, 416 A.2d 676 (R.I. 1980); Price v. State, 397 N.E.2d 1043 ( Ind. App. 1979); State v. Cox, 110 Ariz. Sup.Ct. 603, 522 P.2d 29 (1974).
 "The State argues that once the entrapment defense is raised, the usual evidentiary rules are discarded and the prosecutor may admit evidence generally barred as hearsay or as being more prejudicial than probative. In its brief the State relies heavily an the case of United States v. Dickens, 524 F.2d 441 (5th Cir. 1975), cert. denied, 425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819
(1976). That case admitted hearsay evidence to prove predisposition where the entrapment defense had been raised. However, in United States v. Webster, 649 F.2d 346, 350 (5th Cir. 1981), an en banc court overruled the case relied on by the State and an entire line of cases that had admitted hearsay evidence to prove predisposition. Prior to Webster, the Court of Appeals for the Fifth Circuit had for some time permitted the Government to introduce hearsay as proof of the defendant's predisposition.
Lambeth, 562 So.2d at 578-79.
Prior to the Alabama Supreme Court's release ofLambeth, Alabama courts were very liberal concerning the admission of evidence to show predisposition. Evidence was admitted even though its admission violated the traditional rules of evidence. See Sullivan v. State, 527 So.2d 775
(Ala.Cr.App. 1988), citing United States v. Dickens, 524 F.2d 441,444 (5th Cir. 1975), cert. denied, Glenos v. United States,425 U.S. 994, 96 S.Ct. 2208, 48 L.Ed.2d 819 (1976).
The Lambeth court, noting the problems such an approach had generated, stated the following:
 "In [United States v.] Webster, [649 F.2d 346
(5th Cir. 1981)] statements were made by an informant to a law enforcement officer about specific instances in which the defendant engaged in criminal activities.
The Webster court stated:
 " 'Our creation of a rule that allows gross hearsay evidence to be used to prove predisposition has resulted in the very evils that the rule against hearsay was designed to prevent. The jury is free to believe unsworn, unverified statements of government informants, sometimes unidentified, whose credibility is not subject to effective testing before the jury and whose motivations may be less than honorable. We are hard pressed to envision a situation where the disparity between the probative value and prejudicial affect of evidence is greater. . . . [W]e hold that hearsay evidence is never admissible for the purpose of proving the defendant's predisposition. All prior decisions of this Court to the contrary are hereby overruled.'
 "649 F.2d at 350 (footnotes omitted in Lambeth).
 "We agree with the rationale of the Webster court. We can find no justification for the proposition that where the predisposition of the defendant is in issue, traditional hearsay rules are thrown out the window. There is no legitimate basis why the rules of evidence should be bent or broken simply because the defendant raises the defense of entrapment.
 "We recognize that the Webster case dealt with reputation and hearsay evidence about the defendant. The hearsay evidence admitted in the instant case related *Page 549 
to the reputation of the club where the defendant was arrested. We see no difference in the prejudicial effect of the two patterns of hearsay.
 "Our holding will not, as the State argues, prohibit prosecutors from 'disproving the defense's theory of entrapment.' The State may prove predisposition by using various common methods. Among the most common are proof of prior convictions for similar offenses and evidence of similar criminal acts committed by the accused. . . ."
 "We hold, therefore, that when an accused has raised the defense of entrapment, hearsay is admissible to prove predisposition only according to the customary rules of evidence."
Lambeth, 562 So.2d at 579 (Footnote and Citations omitted.)
Subsequent to Lambeth this court has reversed judgments in entrapment cases where the evidence of predisposition was established by inadmissible hearsay. See Nicklaus v. State,587 So.2d 1053 (Ala.Cr.App. 1991); Haynes v. State, 574 So.2d 893
(Ala.Cr.App. 1990). However, the cases that have been reversed subsequent to Lambeth have dealt only with the admission of inadmissible hearsay. See also 61 A.L.R.3d 293Evidence Rebutting Entrapment Defense (1975). Here, the evidence was not hearsay. The officer who had executed the previous search warrant on the appellant's house testified that the warrant was issued to search for four pounds of marijuana. This evidence tended to show that the appellant had a predisposition to sell controlled substances.
The United States Supreme Court in Sorrells v. United States,287 U.S. 435, 451, 53 S.Ct. 210, 216, 77 L.Ed. 413 (1932), noted that an accused cannot complain when the accused raises an entrapment defense and is subjected to a "searching inquiry into his own conduct and predisposition."
Relying on the new Alabama Rules of Evidence, specifically, Rule 609(b), the appellant contends that evidence of the search warrant issued 11 years earlier was too remote to be of any probative value. Rule 609(b) states:
 "Evidence of a conviction under this rule is not admissible if a period of more than ten years has elapsed since the date of the conviction or of the release of the witness from the confinement imposed for that conviction, whichever is the later date, unless the court determines, in the interests of justice, that the probative value of the conviction supported by specific facts and circumstances substantially outweighs its prejudicial effect."
(Emphasis added.)
The appellant was tried before the Alabama Rules of Evidence became effective on January 1, 1996. This case is therefore governed by caselaw established prior to the adoption of the Alabama Rules of Evidence. McElroy's Alabama Evidence states the following concerning the defense of entrapment:
 "Collateral acts, wrongs or crimes of the accused are admissible when relevant to rebut the defense of entrapment. Such admissibility, as an exception to the general rule excluding character of the accused when offered to prove conformity therewith, is based upon two possible theories. The first is that, by pleading entrapment and thereby contending that the accused possessed no predisposition to commit such a crime, the defense renders the accused's character for a pertinent trait an essential element of the charge. This then opens the door to extrinsic acts or crimes which are relevant to show that, before being approached by the authorities, the accused manifested a preexisting character for committing such a crime. A second theory is that the entrapment defense does not put the accused's character at issue; rather, it merely puts the accused's intent or state of mind at issue and thus opens the door to evidence of relevant collateral acts. . . .
 "It is for the trial judge to determine whether the extrinsic act evidence is indeed relevant to either intent or predisposition to commit the crime charged."
C. Gamble, McElroy's Alabama Evidence § 69.01(13) (5th ed. 1996).
Before the adoption of the Alabama Rules of Evidence, the courts in this state had generally held that the admission of any collateral *Page 550 
offense that occurred more than 10 years before the charged offense was too remote. Register v. State, 640 So.2d 3
(Ala.Cr.App. 1993) aff'd, 640 So.2d 12 (Ala. 1994). However, there was no specified time period that rendered evidence of a collateral matter too remote to be admissible. This court, inPerkins v. State, 580 So.2d 4 (Ala.Cr.App. 1990), stated the following regarding the concept of remoteness:
 "The appellant's prior misconduct was not too remote to be admissible. Cf. Ex parte Cofer, 440 So.2d 1121, 1124 (Ala. 1983) ('a single rape which occurred 10 years prior is too remote to be probative of the issue'). 'Remoteness is a relative standard, varying in its application according to the facts of each particular case. Palmer v. State, 401 So.2d 266 (Ala.Crim.App.), cert. denied, 401 So.2d 270 (Ala. 1981), cert. denied, 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982).' Pride v. State, 473 So.2d 576, 578 (Ala.Cr.App. 1984). In Brewer v. State, 440 So.2d 1155 (Ala.Cr.App. 1983), this court held that the passage of seven years precluded the offense from being considered part of the res gestae of the prior offense, and noted that 'that degree of remoteness alone does not operate to exclude the prior act, see Cofer v. State, 440 So.2d 1116 (Ala.Cr.App. 1983), and affects its weight rather than its admissibility. See Wharton's Criminal Evidence § 260 at 621 n. 14 (C. Torcia 13th ed. 1972).' 440 So.2d at 1159. Thus, as indicated by the trial court, the seven-year span between the prior bad acts by the appellant and the instant charged offense should be considered by the jury in weighing the evidence, rather than affecting its admissibility.
". . . .
 " 'If the evidence is not so remote as to lose its relevancy, the decision to allow or not allow evidence of collateral crimes or acts as part of the State's case-in-chief rests in the sound discretion of the trial judge. McGhee v. State, 333 So.2d 865 (Ala.Cr.App. 1976); McDonald v. State, 57 Ala. App. 529, 329 So.2d 583 (1975), writ quashed, 295 Ala. 410, 329 So.2d 596 (1976), cert. denied, 429 U.S. 834, 97 S.Ct. 99, 50 L.Ed.2d 99
(1976).' Nicks v. State, 521 So.2d 1018, 1026
(Ala.Cr.App. 1987), affirmed, 521 So.2d 1035 (Ala. 1988), cert. denied, 487 U.S. 1241, 108 S.Ct. 2916, 101 L.Ed.2d 948 (1988)."
580 So.2d at 7-8.
We hold that the evidence in this case was not too remote. Furthermore, even if the Alabama Rules of Evidence were applied, this evidence would not be too remote. See the emphasized portion of Rule 609(b) quoted above.
Next, we must determine whether the admission of this evidence was erroneous on the basis that it resulted in a youthful offender adjudication. This court addressed a similar issue in Thomas v. State, 445 So.2d 992 (Ala.Cr.App. 1984), where we stated:
 "The purpose of the Youthful Offender Act is to protect 'those who fall within its ambit from the stigma and practical consequences of a conviction for a crime.' Raines v. State, 294 Ala. 360, 366, 317 So.2d 559 (1975). It is clear, however, that the Act is not intended to prevent the consideration of the adjudication, for every conceivable purpose during the entire lifetime of the youthful offender. Under Section 15-19-7(a), if a youthful offender 'is subsequently convicted of crime, the prior adjudication as youthful offender shall be considered.' (Emphasis added.) Similarly, adjudication as a juvenile is admissible in 'a disposition hearing in a juvenile court or in sentencing proceedings after conviction of a crime for the purposes of a pre-sentence study and report.' Alabama Code section 12-15-72(b) (1975).
 "In this case, Steve pled guilty as a youthful offender the day before he testified for Thomas. By pleading guilty, Steve admitted his participation in and guilt of the identical offense with which Thomas was charged. Ex parte Sankey, 364 So.2d 362 (Ala. 1978), cert. denied, 440 U.S. 964, 99 S.Ct. 1513, 59 L.Ed.2d 779 (1979). When testifying for Thomas, however, Steve testified in substance and effect that he had no criminal intent. By doing so, the witness opened the door for the admission of the youthful offender guilty plea. United States v. Canniff, *Page 551 521 F.2d 565 (2d Cir. 1975), cert. denied sub nom. Benigno v. United States, 423 U.S. 1059, 96 S.Ct. 796, 46 L.Ed.2d 650 (1976) (defendant opened door to youthful offender adjudication by testifying that he had never been convicted of a crime); see also Green v. State, 352 So.2d 1149
(Ala.Crim.App. 1977); 63 A.L.R.3d 1112 at Section 4(b).
 "Moore v. State, 333 So.2d 165 (Ala.Crim.App. 1976), cited by Thomas to support his contention of error, is readily distinguished from the present case in that the prosecutor in Moore was allowed to impeach the accused's general credibility by use of his prior juvenile record which had no connection with the charged offense.
 "We firmly adhere to the general rule that a youthful offender adjudication cannot be used for impeachment purposes. We find, however, a significant distinction between using adjudication as a youthful offender to impeach credibility (which is not permitted because an adjudication is not a conviction, Alderson v. State, 370 So.2d 1119, 1122 (Ala.Cr.App. 1979)), and using a guilty plea as a youthful offender for an offense to contradict the witness's testimony that he did not commit the offense.
 "While the Youthful Offender Act is for the protection of the accused, the act cannot be perverted t allow an accused to enter a guilty plea to an offense and then, in a separate but related proceeding against a co-defendant, deny his participation in that same offense. Cf. United States ex rel. Rohrlich v. Fay, 240 F. Supp. 848
(S.D.N.Y. 1965) (where court noted that the New York Youthful Offender Act, which is very similar to the Alabama Youthful Offender Act, would not permit a witness who had been previously adjudged a youthful offender to be 'vouched for to a jury as a saint when in fact he is a sinner'). Under the circumstances of this case, we think that the State's policy interest in protecting the confidentiality of a youthful offender's record must yield to the public's right to the integrity of the judicial system."
Thomas, 445 So.2d at 994-95. As the court further stated inChannell v. State, 477 So.2d 522, 527-28 (Ala.Cr.App. 1985):
 "Although the conviction was not generally admissible to impeach Channell's credibility because it was not a crime of moral turpitude, Luker v. State, 361 So.2d 1124 (Ala.Cr.App.), cert. dismissed, 361 So.2d 1127 (Ala. 1978), in this case Channell 'opened the door' for the admission of his prior conviction by denying that he had ever seen marijuana before. Compare Thomas v. State, 445 So.2d 992 (Ala.Cr.App. 1984) (Although a youthful offender adjudication may not be used to impeach credibility, when the witness opens the door by denying his criminal intent in a case, his prior youthful offender plea of guilty to the same offense is admissible). See generally Peterson v. State, 452 So.2d 1372, 1375
(Ala.Cr.App. 1984), and cases cited therein. ('Rebuttal evidence, even evidence of prior crimes, is generally admissible within the sound discretion of the trial court.')"
This court's ruling in Thomas, as quoted above, is controlling here. The admission of this evidence to show the predisposition of the appellant was not error. The evidence went towards establishing the appellant's state of mind, i.e., his predisposition to sell drugs, and towards rebutting his testimony that he had never sold drugs before. The admission of the evidence did not violate the traditional rules of evidence. As the United States Supreme Court noted in Sorrells, the state's inquiry into the conduct of an accused who has raised an entrapment defense is "searching."
Moreover, the jury acquitted the appellant of the charge of possession and distributing marijuana on August 19, 1993. This supports the conclusion that the jury found the appellant's defense of entrapment to be persuasive and was not dissuaded by the state's introduction of the above evidence.
For the foregoing reasons, the judgment in this cause is due to be, and is hereby, affirmed.
AFFIRMED.
All the Judges concur. *Page 552