BASCHAB, Presiding Judge,
dissenting.
Aabama has long held that, as a general rule, juvenile convictions may not be used to impeach a defendant or witness. See Ex parte McCorvey, 686 So.2d 425 (Ala.1996); Bone v. State, 706 So.2d 1291 (Ala.Crim.App.1997); Moore v. State, 333 So.2d 165 (Ala.Crim.App.1976); Love v. State, 36 Ala.App. 693, 63 So.2d 285 (1953). With regard to impeachment by evidence of conviction of a crime, Rule 609(d), Ala. R. Evid., provides that “[ejvidence of juvenile or youthful offender adjudications is not admissible under this rule.” Aso, with regard to juvenile court proceedings, § 12-15-72, Ala.Code 1975, provides:
“(a) An order of disposition or other adjudication in proceedings under subsection (a) of Section 12-15-30 shall not be considered to be a conviction or impose any civil disabilities ordinarily resulting from a conviction of a crime or operate to disqualify the child in any civil service application or appointment.
“(b) The disposition of a child and evidence given in a hearing in the court shall not be admissible as evidence against him in any case or proceeding in any other court whether before or after reaching majority, except in a disposition hearing in a juvenile court or in sentencing proceedings after conviction of a crime for the purposes of a presen-tence study and report.”
However, there are some limited exceptions to this rule. In Ex parte Lynn, 477 So.2d 1385 (Ala.1985), the Aabama Supreme Court held that the trial court should have allowed the State to use a juvenile record to impeach an accomplice who had assisted the defendant in the commission of a capital offense. In Thomas v. State, 445 So.2d 992 (Ala.Crim.App. 1984), this court recognized that there was a distinction between using a -witness’ youthful offender adjudication to impeach his credibility and using a guilty plea as a youthful offender to contradict the witness’ testimony that he did not commit that offense. Finally, in Smith v. State, 795 So.2d 788, 818 (Ala.Crim.App.2000), we noted that, “[rjecognizing the competing interests of protecting the anonymity of juvenile offenders versus the right of an accused to confront the witnesses against him, Aabama has limited the Supreme Court’s holding in Davis [v. Alaska, 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974)], by holding that, although juvenile records may properly be used to show a witness’s bias, the use of juvenile records for purposes of general impeachment is disallowed.”
On occasion, this court has also held that a defendant can open the door to questioning about his juvenile record. In Williams v. State, 695 So.2d 644, 647 (Ala.Crim.App.1996), we held that “the appellant ‘opened the door’ for the admission of his prior juvenile adjudications by denying[, on direct examination,] that he had ever been involved in anything similar to the offense for which he was charged.” In Cooley v. State, 686 So.2d 546, 551 (Ala.Crim.App. 1996), we held that, where the appellant raised an entrapment defense, the admission of evidence concerning a youthful offender adjudication “to show the predispo *554 sition of the appellant was not error [where it] went towards establishing the appellant’s state of mind, i.e., his predisposition to sell drugs, and towards rebutting his testimony that he had never sold drugs before.”
The majority concludes that,
“by specifically testifying during direct examination about that portion of his statement in which he denied committing the offense, [the appellant] opened the door to the introduction of the remaining portion of the statement in which he freely admitted that he had previously been charged with a prior juvenile offense involving sexual contact.”
52 So.3d at 551. With regard to written or recorded statements, Rule 106, Ala. R. Evid., provides:
“When a party introduces part of either a writing or recorded statement, an adverse party may require the introduction at that time of any other part of the writing or statement that ought in fairness to be considered contemporaneously with it.”
(Emphasis added.) With regard to unrecorded conversations, the common law completeness doctrine provided that, “if one party proves any part of an unrecorded oral conversation or oral statement, the other party has the right to prove the relevant remainder of it.” Rule 106, Ala. R. Evid., advisory committee’s notes (emphasis added). Neither Rule 106, Ala. R. Evid., nor the common law completeness doctrine allows carte blanche admissibility of the remaining portions of statements. Rather, Rule 106, Ala. R. Evid., incorporates a fairness limitation, and the common law incorporates a “relevant remainder” limitation. Further, § 12-15-72(b), Ala. Code 1975, provides:
“The disposition of a child and evidence given in a hearing in the court shall not be admissible as evidence against him in any case or proceeding in any other court whether before or after reaching majority, except in a disposition hearing in a juvenile court or in sentencing proceedings after conviction of a crime for the purposes of a presentence study and report.”
Finally, “ ‘[i]t has been the recognized doctrine in this State that a legislative enactment takes precedence over a rule of the Court.’ [Ex parte Foshee], 246 Ala. [604] 606, 21 So.2d 827, 828 [ (1945) ].” Ex parte Stewart, 730 So.2d 1246, 1250 (Ala.1999). Because the Legislature specifically limited the admissibility of evidence about juvenile adjudications in § 12 — 15—72(b), Ala. Code 1975, and in light of the limitations that are incorporated into Rule 106, Ala. R. Evid., and the common law completeness doctrine, § 12-15-72, Ala.Code 1975, trumps or overrides any evidentiary principles of completeness. Therefore, the majority’s reliance on the doctrine of completeness is misplaced. The trial court erroneously allowed the State to impeach the appellant’s credibility with evidence about a prior juvenile adjudication from the State of Ohio.[2] Accordingly, I respectfully dissent.

. Relying on its belief that the appellant stated that he would not do something like sexually abusing the victim, the trial court apparently found that he opened the door to examination about his prior juvenile adjudication. However, the record shows that the prosecutor actually stated, “Just wouldn't do something like that, would you?” and that *555 the appellant simply responded, "No. No.” (R. 298.) Thus, the trial court was mistaken in its belief that the appellant specifically stated that he would not do something like sexually abusing the victim. The trial court stated that it would not have allowed the evidence about the appellant’s prior juvenile adjudication if he had simply said, “No.” Although a defendant may certainly open the door to questioning about juvenile adjudications, it is not appropriate for a prosecutor, through precise phrasing of a question, to attempt to force a defendant to open the door to such questioning. In this case, because the appellant simply responded in the negative to the prosecutor's question, his response did not open the door to questioning about his prior juvenile adjudication. Cf. Williams, supra.